WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank John Arnold,<br><br>       Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>       Respondents. | CIV 15-0828-PHX-PGR (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE PAUL G. ROSENBLATT, UNITED STATES DISTRICT COURT

Petitioner Frank John Arnold, who is confined in the Arizona State Prison Complex, filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and supplemental memoranda (Docs. 8, 12, 22, 23, 28). Respondents filed an Answer (Doc. 24), and Petitioner filed a Reply and another supplemental memorandum (Docs. 26, 32).

## BACKGROUND[1]

The State indicted Petitioner with one count of conspiracy to commit first degree murder, a class 1 felony. (Exh. A.) The Arizona Court of Appeals summarized the evidence supporting Petitioner's conviction as follows:

> In late 2007, Angelica Rodriguez met defendant while working as a translator for Foreclosure Consulting Solutions. After completing two transactions together, defendant and Rodriguez developed a personal relationship.

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 24 – Respondents' Answer.

As their relationship progressed, defendant frequently complained to Rodriguez about his wife. He was separated from his wife and "in the middle of a divorce." When defendant told Rodriguez that his wife was "sexually abusing [their] children," she responded that "somebody should kill the bitch." From that point forward, defendant became focused on killing his wife and all of his conversations with Rodriguez centered on finding a way to murder her "without [defendant] getting caught."

Rodriguez quickly determined defendant's interest in killing his wife provided her with a financial opportunity. She agreed to help him with the intent "to play him along and take money from him." Defendant gave Rodriguez approximately $1000 and told her he would give her an additional $3000 if she killed his wife. Rodriguez initially agreed to kill defendant's wife, because she "plan[ned] to string him along and take as much money from him as [she] could," but she later became "scared" and told defendant that she would find someone else to do it for him. Rodriguez's primary motivation for "helping" defendant with his plans to murder his wife was to obtain money to support her drug addiction.

Although Rodriguez became scared and feared defendant might harm her, she chose not to go to the police because she is not lawfully in the country and feared she might be deported. In May 2008, however, Rodriguez was detained by police when she was found in an abandoned house after getting "high." Initially, Rodriguez offered to become a confidential informant and provide the police information about drug dealers. Soon thereafter, Rodriguez informed the detective she was primarily working with that defendant planned to have his wife killed. Rodriguez then met with other police officers and they arranged to have Rodriguez call defendant to set up a meeting between defendant and a "hit man" with the nickname of "Phat Tony" who was, in actuality, Detective Salvadore Sanfillipo.

In the recorded telephone call, defendant expressed his dismay that Rodriguez was taking so long to arrange the murder and he asked whether the hit man she had found would be willing to kill his mother-in-law as well. Defendant also asked for reassurance that Rodriguez was not going to talk to the police. Later that day, defendant stopped by Rodriguez's home and told her he wanted to meet the hit man. He also asked Rodriguez to celebrate with him that they had finally found someone to kill his wife.

At approximately 5:00 p.m. on May 28, 2008, defendant met Detective Sanfillipo at a restaurant parking lot. During their recorded meeting, Detective Sanfillipo provided defendant numerous "outs" to allow him to walk away from the situation. Nonetheless, defendant explicitly stated that he wanted his wife killed. Defendant agreed to pay the detective $1500 upfront and an additional $3000 after his wife was killed. When Detective Sanfillipo asked how defendant wanted his wife killed, defendant suggested that she could "die in a car accident, . . . overdose, or . . . shoot herself in the head." Defendant also stated that Detective Sanfillipo "ought to" kill his wife's mother as well. The following evening, defendant met with Detective Sanfillipo again and provided him with his wife's address and photograph and $1500. As soon as defendant handed Detective Sanfillipo the envelope of money, other police officers placed him under arrest.

(Exh. L at ¶¶ 5-10.)

A jury convicted Petitioner of conspiracy to commit first-degree murder. (Exh. C.) The trial court sentenced Petitioner to life imprisonment with the possibility of parole after 25 years. (Exh. D.)

Petitioner filed a notice of appeal on June 16, 2010. (Exh. E.) On May 27, 2011, Petitioner's counsel filed an opening brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating he had "found no arguable question of law that is not frivolous" and requested the court of appeals to "search the record for fundamental error." (Exh. F at 9.) Additionally, Petitioner's counsel stated that Petitioner had requested the following issues to be raised:

> 1. That the confidential informant, an agent of the State, intentionally caused a mistrial in the first trial by defying orders of the court and testifying there was an order of protection against Appellant; testifying Appellant had prior felony convictions; and testifying Appellant was a sex offender. *See Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984).
>
> 2. That the confidential informant committed perjury in her testimony at trial.
>
> 3. That the prosecutor failed to "correct conflicting testimony of Detective Ott."
>
> 4. That the prosecutor improperly argued the conspiracy was between Appellant and the confidential informant despite the fact the indictment alleged the conspiracy was between Appellant and the undercover police detective.
>
> 5. That the confidential informant lied about not getting any benefit for her testimony.
>
> 6. That the State failed to disclose all of the prior felonies of the confidential informant.
>
> 7. That at trial there was a failure to "correct conflicting testimony of Officer Brilhardt."
>
> 8. That audiotapes and videotapes were improperly altered and improperly admitted at trial.
>
> 9. That the indictment was based on false testimony to the grand jury.
>
> 10. Ineffective assistance of defense counsel.

(Id.) Petitioner's counsel also filed a "motion for leave to allow Appellant to file supplemental brief in propria persona." (Exh. G.) The court of appeals granted Petitioner's

1  motion. (Exh. H.) Meanwhile, Petitioner's counsel provided Petitioner with a copy of the
2  record on appeal, including all of the photostated instruments and minute entries, and 18
3  volumes of reporter's transcripts. (Exh. I.)

4  On July 29, 2011, Petitioner's counsel filed a "notice of filing: Appellant's
5  supplemental brief in propria persona," attaching Petitioner's supplemental brief. (Exh. J.)
6  On November 21, 2011, Petitioner filed another "opening brief," wherein he presented the
7  same above-referenced 10 issues for review that his counsel had included in his Anders
8  opening brief. (Exh. K at 16-17.) Petitioner attached a "motion to compel" to his pro per
9  opening brief, alleging that his attorneys "refuse[d] to produce two transcripts," and set forth
10 a "memorandum of points and authorities" to support his claims raised in his opening brief.
11 (Exh. K.)

12 The Arizona Court of Appeals issued a memorandum decision on December 22, 2011,
13 affirming Petitioner's conviction and sentence. (Exh. L.) The court noted that in resolving
14 Petitioner's appeal, it had considered the issues raised by Petitioner in his later-filed "opening
15 brief." (Id. at 2.) Petitioner filed a motion for reconsideration on March 5, 2012, and the court
16 denied his motion on June 20, 2012. (Exh. OO.)

17 Petitioner then filed a petition for review in the Arizona Supreme Court (Exh. M), but
18 the court denied review on September 13, 2012. (Exh. N.)

19 Petitioner initiated two PCR proceedings. Petitioner filed his first PCR notice in the
20 trial court on January 10, 2012 – after the Arizona Court of Appeals issued its memorandum
21 decision, but before Petitioner sought reconsideration of that decision and before he filed his
22 petition for review in the Arizona Supreme Court. (Exh. O.) The trial court appointed counsel
23 for Petitioner. (Exh. P.) On March 6, 2012, Petitioner filed a motion to withdraw his PCR
24 notice without prejudice because his direct appeal was still pending. (Exh. Q.) On March 13,
25 2012, the trial court granted his motion to withdraw the PCR notice and dismissed the Rule
26 32 proceeding. (Exh. R.)

27
28

1    Petitioner's second PCR notice was filed on October 11, 2012 – approximately one
2  month after the Arizona Supreme Court denied review of his petition for review. (Exh. S.)
3  The trial court appointed counsel for Petitioner (Exh. T), and on March 20, 2013, Petitioner's
4  counsel filed a "notice of completion of post-conviction review and request for extension of
5  time to allow Petitioner to proceed pro per." (Exh. U.) The trial court ordered Petitioner's
6  counsel to remain in an advisory capacity for Petitioner and granted Petitioner an extension
7  of time to file his pro per PCR petition. (Exh. V.)

8    On April 30, 2013, Petitioner filed a "motion to enlarge time for filing petition for
9  postconviction relief" (Exh. W), and the trial court granted Petitioner an extension of time
10 to file his PCR petition (Exh. X). On May 28, 2013, Petitioner filed a "motion to enlarge and
11 expand to allow missing transcripts to be produced that did not exist at defendant's trial."
12 (Exh. Y.) The trial court denied his motion. (Exh. Z.) Petitioner filed a motion for
13 reconsideration (Exh. AA), which the trial court denied on July 24, 2013 (Exh. BB).

14   On August 5, 2013, Petitioner filed a "petition for review [of the] motion for
15 reconsideration of motion to produce missing transcript from record of appeal." (Exh. CC.)
16 The State filed a "response/motion to strike petition for review," stating that Petitioner had
17 not yet filed a PCR petition and that he was "seeking review of the trial court's preliminary
18 ruling that he is not entitled to pre-petition discovery," and argued that although he was
19 permitted to file a petition for special action, he was not entitled to review of that ruling
20 under Rule 32.9 of the Arizona Rules of Criminal Procedure. (Exh. DD.) The Arizona Court
21 of Appeals agreed, granted the State's motion to strike, and dismissed Petitioner's petition
22 for review on August 21, 2013. (Exh. EE.) Petitioner filed a petition for special action on
23 September 12, 2013, but the court of appeals declined jurisdiction. (Exh. QQ.) On September
24 23, 2013, the trial court granted Petitioner an extension of time to file his PCR petition. (Exh.
25 FF.)

26   Petitioner filed a PCR petition on December 2, 2013, but on January 6, 2014, the trial
27 court found that the petition was non-compliant with the Arizona Rules of Criminal

- 5 -

Procedure, permitted Petitioner to "revise his petition [to] a maximum of 30 pages" in length, and granted Petitioner another extension of time in which to file his revised PCR petition. (Exh. GG.)

Petitioner filed another PCR petition on February 6, 2014, raising the following claims:

    1. Prosecutorial misconduct before the grand jury;

    2. Perjured testimony before the grand jury;

    3. State tampering with critical evidence;

    4. State presenting false evidence and misleading the jury with altered evidence;

    5. State witnesses for "case in chief" perjured testimony to the jury; "non-credibility;"

    6. State's failure to disclose exculpatory evidence;

    7. State's evidence admitted improperly;

    8. Judicial misconduct;

    9. The trial court violated the exclusionary rule;

    10. The trial court violated Appellant's due process rights of the U.S. Constitution;

    11. Altered evidence by the Maricopa County Attorneys' Office; and,

    12. Ineffective assistance of counsel, failure to object to the State's altered evidence.

(Exh. HH at 2.) Although the trial court initially found that this petition was also non-compliant (Exh. II), it ultimately accepted it on May 6, 2014 (Exh. JJ). The State filed a response on June 19, 2014. (Exh. KK.) Petitioner filed a reply on August 26, 2014. (Exh. LL.)

On September 3, 2014, the trial court denied Petitioner's PCR petition, concluding that "issues 1-5 are precluded because [Petitioner] raised the issues on appeal and the court ruled against him," "claims 6-8 are precluded because [he] failed to either raise the issues at trial or on appeal," and that Petitioner's claims of ineffective assistance of counsel ("IAC") "fail[ed] to set for[th] a colorable claim for relief." (Exh. MM.) Petitioner did not appeal this ruling to the Arizona Court of Appeals.

In his First Amended habeas petition, Petitioner raises five grounds for relief. In Ground One, Petitioner alleges that he was denied due process in violation of the Fourteenth Amendment "when the police used entrapment to create charged crime." In Ground Two, Petitioner alleges that he was denied effective assistance of appellate counsel when appellate counsel failed to provide any arguments in his Anders brief. In Ground Three, Petitioner alleges that he was denied due process in violation of the Fourteenth Amendment when the prosecutor provided false information to the jury during opening statements and closing arguments. In Ground Four, Petitioner alleges he was denied due process in violation of the Fourteenth Amendment when the Maricopa County Sheriff's Office and the District Attorney's Office manufactured, edited, altered, and destroyed audio and video evidence that was used at trial. In Ground Five, Petitioner alleges that he was denied effective assistance of counsel during his post-conviction proceedings when his counsel failed to submit and argue issues that Petitioner provided to counsel.

## DISCUSSION

In their Answer, Respondents contend that Grounds Two and Three are procedurally defaulted, Grounds One and Four fail on the merits, and Ground Five is not cognizable in habeas proceedings. As such, Respondents request that the Court deny and dismiss Petitioner's habeas petition with prejudice.

**A.   Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or

1  through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th
2  Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

3       Proper exhaustion requires a petitioner to have "fairly presented" to the state courts
4  the exact federal claim he raises on habeas by describing the operative facts and federal legal
5  theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78
6  (1971) ("[W]e have required a state prisoner to present the state courts with the same claim
7  he urges upon the federal courts."). A claim is only "fairly presented" to the state courts
8  when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim
9  under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)
10 (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner
11 fails to alert the state court to the fact that he is raising a federal constitutional claim, his
12 federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

13      A "general appeal to a constitutional guarantee," such as due process, is insufficient
14 to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518
15 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005)
16 ("Exhaustion demands more than drive-by citation, detached from any articulation of an
17 underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because
18 its factual basis was presented to the state courts on state law grounds – a "mere similarity
19 between a claim of state and federal error is insufficient to establish exhaustion." Shumway,
20 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

21      Even when a claim's federal basis is "self-evident," or the claim would have been
22 decided on the same considerations under state or federal law, a petitioner must still present
23 the federal claim to the state courts explicitly, "either by citing federal law or the decisions
24 of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted),
25 amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004)
26 (claim not fairly presented when state court "must read beyond a petition or a brief ... that
27 does not alert it to the presence of a federal claim" to discover implicit federal claim).

28

- 8 -

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

---

[2] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[3] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

1    Moreover, if a state court applies a procedural bar, but goes on to alternatively address
2 the merits of the federal claim, the claim is still barred from federal review. See Harris v.
3 Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of
4 a federal claim in an *alternative* holding. By its very definition, the adequate and independent
5 state ground doctrine requires the federal court to honor a state holding that is a sufficient
6 basis for the state court's judgment, even when the state court also relies on federal law. ...
7 In this way, a state court may reach a federal question without sacrificing its interests in
8 finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580
9 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as
10 here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S.
11 at 264 n.10).

12    A procedural bar may also be applied to unexhausted claims where state procedural
13 rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred
14 from habeas review when not first raised before state courts and those courts "would now
15 find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.
16 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only
17 when a state court has been presented with the federal claim,' but declined to reach the issue
18 for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally
19 barred.'") (quoting Harris, 489 U.S. at 263 n.9).

20    In Arizona, claims not previously presented to the state courts via either direct appeal
21 or collateral review are generally barred from federal review because an attempt to return to
22 state court to present them is futile unless the claims fit in a narrow category of claims for
23 which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding
24 claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar),
25 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona
26 courts have consistently applied Arizona's procedural rules to bar further review of claims
27 that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See,
28

- 10 -

1  e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule
2  are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001)
3  ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in
4  several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S.
5  856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona
6  courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal
7  Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996)
8  (waiver and preclusion rules strictly applied in post-conviction proceedings).

9        The federal court will not consider the merits of a procedurally defaulted claim unless
10 a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for
11 his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995);
12 Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and
13 prejudice" test, a petitioner must point to some external cause that prevented him from
14 following the procedural rules of the state court and fairly presenting his claim. "A showing
15 of cause must ordinarily turn on whether the prisoner can show that some objective factor
16 external to the defense impeded [the prisoner's] efforts to comply with the State's procedural
17 rule. Thus, cause is an external impediment such as government interference or reasonable
18 unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir.
19 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules
20 or other forms of general inadvertence or lack of legal training and a petitioner's mental
21 condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly
22 present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear
23 that a fundamental miscarriage of justice exists when a Constitutional violation has resulted
24 in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.
25 \\\
26
27
28

**1.     Grounds Two and Three**

In Ground Two, Petitioner alleges that he was denied effective assistance of appellate counsel when appellate counsel failed to provide any arguments in his Anders brief. Petitioner concedes and the record reflects that Petitioner failed to present this issue on direct appeal or in any of his PCR proceedings. (Doc. 8 at 9; Doc. 24, Exhs. F, K, L, M, HH.)

In Ground Three, Petitioner alleges that he was denied due process in violation of the Fourteenth Amendment when the prosecutor provided false information to the jury during opening statements and closing arguments. The record again reflects that Petitioner failed to present this issue on direct appeal or in any of his PCR proceedings. (Doc. 24, Exhs. F, K, L, M, HH.)

Consequently, Grounds Two and Three were not fully and fairly presented to state courts. See 28 U.S.C. § 2254(b). Failure to fairly present Grounds Two and Three has resulted in procedural default because Petitioner is now barred from returning to state courts. See Ariz.R.Crim.P. 32.2(a), 32.4(a). Although a procedural default may be overcome upon a showing of cause and prejudice or a fundamental miscarriage of justice, see Coleman, 501 U.S. at 750-51, Petitioner has not established that any exception to procedural default applies.

Moreover, although "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309, 1315 (2012), Martinez does not apply to Ground Three as said claim does not allege ineffective assistance of counsel. As to Ground Two, to the extent Petitioner might argue that ineffective assistance of counsel provides cause for his failure to properly exhaust his claim of ineffective assistance of appellate counsel, his argument fails.

Under Martinez and Ha Van Nuyen v. Curry, 736 F.3d 1287, 1295 (9th Cir. 2013) (holding that the modified "cause" standard articulated in Martinez, "applies to all Sixth Amendment ineffective assistance claims, both trial and appellate, that have been

- 12 -

procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding"), ineffective assistance of post-conviction counsel during an initial review collateral proceeding can constitute cause to excuse a procedurally defaulted claim of ineffective assistance of appellate counsel. See Martinez, 132 S.Ct. at 1315; Nguyen, 736 F.3d at 1296. To establish cause under Martinez, Petitioner must establish a substantial claim of ineffective assistance of appellate counsel. See Trevino v. Thaler, ___ U.S. ___, 133 S.Ct. 1911, 1918 (2013).

The test outlined in Strickland v. Washington, 466 U.S. 668 (1984) applies to claims of ineffective assistance of appellate counsel. See Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986). Petitioner must show that his appellate counsel's performance was objectively unreasonable in failing to provide any arguments in his Anders brief. See Smith v. Robbins, 528 U.S. 259, 285 (2000). However, appellate counsel is not required to raise meritless claims on appeal. See Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (citations omitted)); see also Davis v. Singletary, 853 F.Supp. 1492, 1549 (M.D. Fla. 1994) ("However, appellate counsel need not advance every possible argument, even those that are non-frivolous, and should instead concentrate his advocacy on winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." (internal quotations and citations omitted)). To succeed on a claim that appellate counsel was ineffective for failing to raise a particular argument on appeal, the petitioner must establish that the omitted argument was likely to be successful and therefore that he was prejudiced by its omission. See Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir. 2007); Weaver v. Palmateer, 455 F.3d 958, 970 (9th Cir. 2006). The inquiry is not whether raising a particular issue on appeal would have been frivolous, but whether there is a reasonable probability that raising the issue would have led to the reversal of the petitioner's conviction. See Miller, 882 F.2d at 1434. If the petitioner had only a

1 remote chance of obtaining reversal based upon a specific issue, neither element of
2 Strickland is satisfied. See id.

3    In this case, Petitioner's appellate counsel (1) specifically advised Petitioner that the
4 issues Petitioner wished to raise were not "viable," but that he nonetheless requested that the
5 Arizona Court of Appeals review the issues Petitioner wanted to raise; and (2) included these
6 10 issues in his Anders brief. (Exhs. F, I.) Thus, Petitioner cannot establish deficient
7 performance.

8    Furthermore, the Arizona Court of Appeals' memorandum decision considered and
9 rejected the claims Petitioner wanted counsel to raise. (Exh. L.) Petitioner, therefore, cannot
10 show that he was prejudiced by the filing of an Anders brief, because the record conclusively
11 establishes that he would not have prevailed on any of these issues. See Miller, 882 F.2d at
12 1434 n.9; see also Morrison v. Estelle, 981 F.2d 425, 429 (9th Cir. 1992) (appellate counsel
13 not ineffective where argument would lose).

14    Thus, Petitioner has not established a substantial claim of ineffective assistance of
15 appellate counsel and has not overcome the procedural bar to his claim of ineffective
16 assistance of appellate counsel asserted in Ground Two.

17 **B.    Merits**

18    Pursuant to the AEDPA[4], a federal court "shall not" grant habeas relief with respect
19 to "any claim that was adjudicated on the merits in State court proceedings" unless the state
20 court decision was (1) contrary to, or an unreasonable application of, clearly established
21 federal law as determined by the United States Supreme Court; or (2) based on an
22 unreasonable determination of the facts in light of the evidence presented in the state court
23 proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)
24 (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard

---

[4] Antiterrorism and Effective Death Penalty Act of 1996.

1  of review). "When applying these standards, the federal court should review the 'last
2  reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

3  A state court's decision is "contrary to" clearly established precedent if (1) "the state
4  court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"
5  or (2) "if the state court confronts a set of facts that are materially indistinguishable from a
6  decision of [the Supreme Court] and nevertheless arrives at a result different from [its]
7  precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an
8  'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule
9  but then applies it to a new set of facts in a way that is objectively unreasonable, or 2)
10 extends or fails to extend a clearly established legal principle to a new context in a way that
11 is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

### 1. Grounds One and Four

In Ground One, Petitioner alleges that he was denied due process in violation of the Fourteenth Amendment "when the police used entrapment to create charged crime." In essence, Petitioner appears to claim that the State tampered with or manufactured the evidence used to convict Petitioner of the crime he claims he would not have committed otherwise. Petitioner argues: (1) Detective Sanfillipo "destroyed" the original recording of his conversation with Petitioner, which allegedly contained the first five minutes of their conversation; (2) Sanfillipo manufactured this crime when he asked Petitioner "if he wanted him to kill his wife;" and (3) "had the police left [him] alone, the crime would [have] never happened."

In Ground Four, Petitioner elaborates on the manufactured-evidence claim set forth in Ground One and claims that he was denied due process in violation of the Fourteenth Amendment when the Maricopa County Sheriff's Office and the District Attorney's Office manufactured, edited, altered, and destroyed audio and video evidence that was used at trial.

In rejecting Petitioner's claims relating to the alleged false, manipulated, or destroyed evidence, the Arizona Court of Appeals reasoned as follows:

> Defendant contends that the recordings of his conversations with Detective Sanfillipo were altered and should not have been admitted into evidence. Absent an abuse of discretion, we will not disturb a trial court's decision to admit evidence. *State v. Lopez*, 174 Ariz. 131, 139, 847 P.2d 1078, 1086 (1992). The trial court held a hearing on the admissibility of the recordings and the undisputed evidence reflects that the State did not cut or splice the recordings. Instead, the only alteration to the recordings was an enhancement to reduce the noise in the background so that Detective Sanfillipo and defendant's voices would be clearer. Thus, there was no alteration to the material content of the recordings and the trial court did not abuse its discretion by admitting them into evidence.

(Exh. L at ¶ 17.)

Pursuant to Napue v. Illinois, 360 U.S. 264 (1959), the knowing use of false evidence by the state, or the failure to correct false evidence, violates due process. See id. at 269. To prevail on a Napue claim, the petitioner must show that "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) ... the false testimony was material." Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005) (internal quotation marks omitted). For the purpose of Napue claims, materiality is determined by whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. at 985 (internal quotation marks omitted). "Under this materiality standard, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. at 984 (internal quotation marks omitted).

Here, Petitioner fails to establish that the evidence admitted at trial was "actually false." The Arizona Court of Appeals explicitly found that the evidence was "undisputed" and that the State did not cut or splice the recordings. (Exh. L at ¶ 17.) The court concluded that the evidence presented at the trial court's hearing to determine the admissibility of the recordings conclusively defeated Petitioner's manufactured-evidence claim. (Id.) The factual record supports the court of appeals' conclusion.

Specifically, on March 11, 2010, the trial court addressed Petitioner's argument that the recording had been altered or manufactured, and scheduled a hearing to consider this

- 16 -

1  claim. (Exh. RR at 3-20.) The hearing was conducted on March 15, 2010, immediately after
2  the jury was selected for trial. (Exh. SS at 125-164.) The record demonstrates that at this
3  hearing, the State's paralegal assigned to Petitioner's case testified that she: (1) disclosed 11
4  CDs and two videotapes to the defense; (2) submitted a request to the audio/visual ("AV")
5  department to edit the recordings to redact information that the trial court had ordered to be
6  redacted from the CD; (3) reviewed the recordings after they were edited to ensure the edits
7  were done correctly; and (4) asked the AV department to change some of the formats of the
8  CDs so they could be played on a DVD player instead of a computer. (Id. at 128-32.) She
9  further testified that the only enhancement made to the recordings was to eliminate some
10 background noise to make the recordings more clear. (Id. at 133-34.) Detective Sanfillipo
11 also testified at the hearing that the video recording contained his full conversation with
12 Petitioner and that there was nothing missing from the video. (Id. at 149-50.) The trial court
13 ruled that the recordings were admissible and that they "accurately reflect[ed] what
14 [Detective Sanfillipo] heard or [what] transpired." (Id. at 162.)

15 Lastly, the Court notes that according to the record, the jury received an entrapment
16 defense instruction at the conclusion of trial stating:

**Entrapment**

Defendant has raised the affirmative defense of entrapment with respect to the charged offenses of Conspiracy to Commit First-Degree Murder. Defendant must prove the following by clear and convincing evidence;

1. The idea of committing the offense started with law enforcement officers or their agent rather than Defendant; and

2. The law enforcement officers or their agent urged and induced Defendant to commit the offense, and

3. Defendant was not predisposed to commit the type of offenses charged before the law enforcement officers or their agent urged and induced Defendant to commit the offenses.

Defendant does not establish entrapment if he was predisposed to commit the offenses. Entrapment cannot result from the inducements of a private citizen but must be the product of conduct by law enforcement officers or their agent. It is not entrapment for law enforcement officers or their agent to use a ruse or to conceal their identity. The defense of entrapment is not established if

> Defendant was ready and willing to violate the law and the law enforcement officers or their agent merely afforded him the opportunity to commit the crime. The conduct of law enforcement officers and their agent may be considered by you in determining if Defendant has proven entrapment.
>
> If you find that Defendant has proven entrapment by clear and convincing evidence you must find Defendant not guilty of the offense.

(Exh. B at 5.) The jury rejected this defense finding that Petitioner failed to prove entrapment by clear and convincing evidence when it found him guilty of conspiracy to commit first-degree murder beyond a reasonable doubt. (Exh. C.)

Accordingly, the Court finds that Petitioner has failed to establish that the state court's decision was contrary to, or an unreasonable application of, clearly established Supreme Court precedent or "based on an unreasonable determination of the facts" in light of the record before the Court.

**C.     Non-Cognizable Claim**

In Ground Five, Petitioner asserts that he was denied effective assistance of counsel during his post-conviction proceedings when his counsel failed to submit and argue issues that Petitioner provided to counsel.

The Supreme Court of the United States has held that "a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review[.]" Coleman, 501 U.S. at 756. The Ninth Circuit has also observed that "*Martinez* did not create a constitutional right to effective assistance of counsel in PCR proceedings." Dickens v. Ryan, 688 F.3d 1054 (9th Cir. 2012). "Thus, the claim of ineffective assistance of PCR counsel used to establish cause in the narrow circumstances outlined in *Martinez* is an equitable claim and not a constitutional claim[.]" Id. As such, any attempt by Petitioner to assert an ineffective assistance of counsel claim regarding his PCR counsel fails.

Moreover, to the extent Petitioner is attempting to use Ground Five as cause for his procedural default of Ground Two, the Court has found that Petitioner has failed to establish that the underlying IAC claim is "substantial" under Martinez. As such, his claim in Ground Two remains procedurally defaulted without excuse.

**CONCLUSION**

Having determined that Grounds Two and Three are procedurally defaulted, Grounds One and Four fail on the merits, and Ground Five is not cognizable in habeas proceedings, the Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 8) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right and because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order

or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 27th day of July, 2016.

Michelle H. Burns
United States Magistrate Judge